IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **RUSSELL L. CRUMP o/b/o,** } | |
| **KATRINA LISHELLE CRUMP,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Civil Action No.: 4:11-cv-3365-RDP |
| } | |
| **MICHAEL J. ASTRUE, Commissioner of the** } | |
| **Social Security Administration,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Russell L. Crump ("Plaintiff") brings this action on behalf of his deceased spouse, Katrina L. Crump ("Claimant"), pursuant to Section 1631(c)(3) of the Social Security Act ("the Act") seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying Claimant's application for Supplemental Security Income ("SSI"). *See also* 42 U.S.C. § 1383(c)(3). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

### I. Proceedings Below

On August 21, 2007, Claimant filed an application for SSI, alleging disability beginning February 1, 2007. (Tr. 95). The claim was denied initially on October 16, 2007. (Tr. 79). On October 18, 2007, Claimant filed a written request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 76-77). Claimant's request was granted and a hearing was held on June 22, 2009, in Gadsden, Alabama. (Tr. 26-50). In his decision dated July 30, 2009, the ALJ determined that

Claimant was not disabled, as defined in the Act. (Tr. 25). Plaintiff filed a request for review of the ALJ's decision with the Social Security Administration's Office of Hearings and Appeals. (R. 7).

Claimant died of cardiac arrest on April 8, 2010, while her case was pending at the Appeals Council. (Tr. 403). On June 21, 2010, Russell L. Crump, Claimant's widower, filed Notice Regarding Substitution of Party Upon Death of Claimant with the Office of Hearings and Appeals allowing him to be a substitute party and to proceed with Claimant's request for review. (Tr. 87). The Appeals Council denied Claimant's request for review, and the ALJ's decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review. (Tr. 1).

Claimant was thirty-eight years old at the time of the hearing. (Tr. 29, 89). Claimant had a ninth grade education and had worked in the past as a sock pairer and boarder. (Tr. 29, 45, 101, 106, 137). Claimant alleged onset of disability on February 1, 2007, and she testified that she had not worked since that date. (Tr. 29, 89). The additional relevant facts are discussed as appropriate in the court's discussion section of the opinion. *See* Section V. Discussion *infra*.

## II. ALJ's Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant can not claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a

combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If it is determined that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* However, if the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the instant case, the ALJ made the following determinations: (1) Claimant had not engaged in substantial gainful activity since her application date of August 21, 2007; (2) Claimant had the severe impairments of Chronic Obstructive Pulmonary Disorder (COPD), Obesity, and

Adjustment Disorder; but that (3) Claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) Claimant was unable to perform any past relevant work. (Tr. 17-20, 24). The ALJ further determined that Claimant retained the RFC to perform unskilled work at the level requiring only light exertion that can be learned in thirty days or less, involving no more than simple work-related decisions with the workplace changes, and with the need to avoid concentrated exposure to fumes, odors, dusts, and gases. (Tr. 17-24).

In making Claimant's RFC determination, the ALJ evaluated the credibility of Claimant's pain testimony. The ALJ stated, "after careful consideration of the evidence, . . . [C]laimant's medically determinable impairments could not reasonably be expected to cause [her] alleged symptoms and, [her] statements concerning the intensity, persistence and limiting effects of [her] symptoms are simply not credible or, at best, only credible to the extent they are consistent with the [RFC] assessment that I have made." (Tr. 22). Considering Claimant's age, education, work experience, RFC determination, the available medical evidence, and the Vocational Expert's testimony, the ALJ determined that jobs existed in significant numbers in the national economy that Claimant could have performed . (Tr. 24-25, 44-49).

### III.  Plaintiff's Argument for Reversal or Remand

Plaintiff argues generally that the ALJ's decision is not supported by substantial evidence. Plaintiff's brief also references that an issue in this case is whether the ALJ committed reversible error, but does not assert any specific instance of application of an improper legal standard. The court has carefully reviewed the record and the briefs in this case.

After careful review, and giving Plaintiff all benefits of the doubt, it appears that he alleges (again, very generally) that substantial evidence does not support the decision denying disability benefits and that improper legal standards were applied. (Pl.'s Mem. 3). The court deems Plaintiff's brief to argue that (1) the ALJ ignored evidence of Claimant's headaches, falls, and her use of mobility assistance, and consideration of that evidence would support a different conclusion; (2) the ALJ's determination that Claimant was able to perform a limited range of light work for eight hours a day, forty hours a week was not supported by substantial evidence; (3) the ALJ's RFC determination (both physical and mental) was incomplete because it did not consider evidence of Claimant's headaches, falls, and her use of mobility assistance; and (4) the ALJ did not apply the pain standard correctly.

## IV. Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal quotations omitted). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if

the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin*, 894 F.2d at 1529. The court "may not decide the facts anew, reweight the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer*, 395 F.3d 1206, 1210 (11th Cir. 2005). Legal standards are reviewed *de novo*. *Moore*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## V. Discussion

**1. The ALJ's Determination of Severe Impairments Is Supported by Substantial Evidence.**

### A. The ALJ Did Not Ignore Contrary Evidence.

The ALJ concluded that Claimant had the following severe impairments: Chronic Obstructive Pulmonary Disorder (COPD), Obesity, and Adjustment Disorder. (Tr. 17). The ALJ's examination of the evidence included a review of Claimant's medical records ranging from March 24, 2006 to April 20, 2009, as well as testimony by Claimant and a Vocational Expert. (Tr. 17-19, 26-50). Plaintiff argues that the ALJ's decision was not supported by substantial evidence. (Pl's. Mem. 12-13). Plaintiff points to Claimant's reports of headaches, frequent falls, and use of mobility assistance. (*Id*.). Plaintiff alleges that the ALJ reached an incorrect conclusion related to whether Claimant suffered from severe impairments by ignoring these claims. (*Id*.). However, a review of the ALJ's determination demonstrates that he considered Claimant's reports of headaches, falls, and use of mobility assistance.

In addressing the evidence of headaches, the ALJ specifically stated, "[t]he evidence of chronic Headaches and some level of Sleep Disorder fails to demonstrate any significant functional limitation associated with those conditions and they are found to be non-severe under the Act and

Regulations." (Tr. 19). The ALJ considered Claimant's use of a walker and the prescription of a wheelchair in his ruling stating, "[Claimant] was using a walker," and "Dr. Cerimele apparently prescribed a wheelchair." (Tr. 17, 18). Thus, it is clear that the ALJ expressly considered Claimant's impairments and did not ignore contrary evidence in making his determination.

> **B.    Substantial Evidence Supports the ALJ's Findings Regarding Severe Impairments.**

In making his determination regarding Claimant's impairments, the ALJ considered her medical records from March 24, 2006 to April 20, 2009. (Tr. 17-19). During this period, Claimant was treated by Dr. Cerimele and seen by three other physicians: Drs. Michael Watts, Anjaneyulu Alapati, and Olga Bogdanova. Medical records indicate that Claimant's headaches did not result in any significant functional limitations and that testing regarding her mobility was repeatedly negative. This evidence supports the ALJ's findings regarding Claimant's headaches, falls, and her use of mobility assistance.

Claimant began treatment with Dr. Francesca Cerimele in June 2007, and continued to receive treatment from Dr. Cerimele through August 2008. (Tr. 180-86, 300-31). Dr. Cerimele's medical records include a negative CT scan, a negative x-ray, and a CT scan showing only a thickened right colon. (Tr. 306, 311, 321 ). Dr. Cerimele's assessments are consistent with the ALJ's findings with one exception — Dr. Cerimele found Claimant suffered from cerebellar ataxia. However, this diagnosis was not repeated during Claimant's other examinations and was contradicted by later neurological examinations. (Tr. 194-95, 330, 338-39).

Dr. Michael Watts saw Claimant in July and August 2007. (Tr. 192-98, 213-22). Dr. Watts conducted a neurologic examination, dated July 2, 2007, which included examinations of Claimant's

speech, cranial nerves, motor functioning, sensory functioning, coordination, reflex, spinal structure, and a gait and station examination. (Tr. 194-95). Claimant's examination results were found to be normal. (Tr. 213). Nerve conduction studies performed on Claimant revealed no abnormalities of motor or sensory nerves. (Tr. 213). Additionally, MRI tests of Claimant's lumbar spine, cervical spine, and brain all appeared substantially normal. (Tr. 221, 223, 224). Dr. Angus Baird, in reporting the result of Claimant's brain MRI to Dr. Watts, noted white matter "hyperintensities" but found "no evidence of olibopontine cerebellar atrophy." (Tr. 223).

Dr. Anjaneyulu Alapati saw Claimant from October 2007 through May 2008. Dr. Alapati performed a neurological examination on October 19, 2007. The results of that examination were normal and consistent with Dr. Watts' examination, with two exceptions: Dr. Alapati noted (1) that "[Claimant] walks very slowly," and (2) "[w]hen she tries to stand, she falls over." (Tr. 339). Dr. Alapati also noted that the etiology of Claimant's leg weakness was uncertain and that her headaches appeared to be related to depression and stress. (Tr. 337). Based on a December 2007 examination, Dr. Alapati concluded, "I think most of her symptoms, headaches, and leg weakness appear to be of non-neurological origin, most likely secondary to depression." (Tr. 335). The findings from Claimant's May 2008 examination were normal. (Tr. 334).

Dr. Olga Bogdanova examined Claimant in March and April 2009. Dr. Boganova performed a neurological examination on April 2, 2009. (Tr. 378). This examination was normal, and consistent with those conducted by Dr. Watts and Dr. Alapati. (Tr. 378). Dr. Boganova noted that Claimant's cerebrospinal fluid composition (taken from a prior spinal tap) was normal. (Tr. 378). Dr. Boganova also conducted an electroencephalography ("EEG") which was normal. (Tr. 382).

This substantial evidence supports the ALJ's findings regarding Claimant's headaches, falls, and use of mobility assistance. Three different examining physicians conducted three separate and independent neurological examinations of Claimant, and all of those examinations consistently produced normal results.

2. **The ALJ's Determination that Claimant Could Engage in Substantial Gainful Activity is Supported by Substantial Evidence.**

Plaintiff submits that the ALJ's finding that the Claimant could have engaged in substantial gainful activity even with her headaches, motor disturbances, and other medical impairments is not supported by substantial evidence. (Pl's Mem 15).[1] For the reasons already stated, the court concludes that the ALJ's findings that Claimant could have engaged in substantial gainful activity is supported by substantial evidence. And, because the ALJ's findings are supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record evidence preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin*, 894 F.2d at 1529.

3. **The ALJ's Determination of Claimant's RFC is Supported by Substantial Evidence.**

The ALJ determined that Claimant had the RFC to perform unskilled work at the light exertional level that can be learned in thirty days or less involving no more than simple work-related decisions with the workplace changes, and with the need to avoid concentrated exposure to fumes, odors, dusts, gases, etc. (Tr. 20). Plaintiff suggests that evidence of Claimant's headaches, frequent falls, and her use of mobility assistance supports a conclusion contrary to that reached by the ALJ.

---

[1] Although Plaintiff argues that the ALJ's findings amount to "reversible error," more precisely the court's review is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

(Pl.'s Mem. 12).[2] This court finds the ALJ expressly considered evidence of Claimant's headaches, falls, and her use of a mobility assistance in reaching his determination regarding her RFC. (Tr. 21-22). Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). Rather, it must defer to the Commissioner's decision if it is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). After careful review, the court concludes that the substantial evidence supports the ALJ's RFC determination and his finding that Claimant was not disabled.

**4.    The ALJ's Mental RFC Findings Are Supported by Substantial Evidence.**

Substantial evidence also supports the ALJ's mental RFC findings. Mary Arnold, Psy.D., performed a consultative examination of Claimant on September 25, 2007. Dr. Arnold noted Claimant was clean, enjoyed a composed demeanor, and demonstrated appropriate behavioral and social skills. (Tr. 239). Claimant's mood and affect were calm, congruent, and normal. (*Id*.). She had no suicidal ideation. (*Id*.). Claimant was alert and fully oriented, could perform mental calculations, repeat four digits forward and backward, count backward from 20, and perform serial sevens. (*Id*.). Dr. Arnold also found Claimant had no deficit in abstract reasoning, her speech was fluid and understandable, she reached goal ideas without tangential or circumstantial thought, and there was no evidence that she experienced delusions or hallucinations. (*Id*. at 239-40). She had no

---

[2]Plaintiff's brief states, "Despite the evidence of disabling pain from headaches, despite the frequent falls and the fact that Claimant is using either a walker or a wheelchair and despite intensive physical therapy, the ALJ stills states . . . that she can perform a limited range of light work for 8 hours a day, 40 hours a week."

obvious problems with judgment and her IQ was estimated in the low-average range. (*Id*.). Dr. Arnold diagnosed Claimant as suffering from an adjustment disorder, not otherwise specified, and assigned a global assessment of functioning ("GAF") score of 53 (a score that indicates only moderate symptoms). (Tr. 241).[3] Dr. Arnold's generally normal examination findings related to Claimant and his assessment that she suffered only moderate symptoms are each consistent with and support the ALJ's mental RFC finding.

State agency psychologist Gordon J. Rankart provided an assessment of Claimant on October 15, 2007.[4] Dr. Rankart opined that Claimant's mental impairments of dysthymic disorder and anxiety were not severe. (Tr. 242, 245, 247). An ALJ may rely on the findings of a non-examining physician where the facts support a decision to discount the other medical opinions of record. *See Wainwright v. Comm. of Soc. Sec.*, No. 06-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007). Here, Dr. Rankart's opinion was actually less restrictive than that of the ALJ. Thus, although the ALJ properly accounted for subsequently submitted evidence in the record that was not available to Dr. Rankart (Tr. 23), Dr. Rankart's opinion supports the ALJ's findings.

Claimant did not seek any mental health treatment until January 2008 when she presented at Mountain Lakes Behavioral Healthcare ("Mountain Lakes"). (Tr. 263). When examined at that time, Claimant's appearance and activity were normal, she had monotone speech, and a withdrawn

---

[3] GAF scores of 51-60 indicate moderate symptoms or moderate difficulty in social occupational or school functioning. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000)(DSM-IV).

[4] State agency consultants are experts in the Social Security disability programs and their opinions may be entitled to great weight if supported by the evidence in the record. *See* 20 C.F.R. § 416.927(f); SSR 96-6p, 1996 WL 374180 (S.S.A. 1996).

attitude with dysphoric mood and depressed affect. (Tr. 263). Claimant's productivity, orientation, and memory were normal. (*Id*.). She did report suicidal thoughts. (*Id*.).

The following month, Claimant was diagnosed with major depressive disorder (recurrent, moderate) and panic disorder with agoraphobia, and was assessed with a GAF score of 55 (again, indicating only moderate symptoms). (Tr. 257). Throughout the remainder of Claimant's mental health treatment, her GAF scores were repeatedly scored in the 55-60 range, indicating moderate, nearly mild symptoms. The ALJ properly concluded this evidence belied Claimant's contentions that she was having very frequent hallucinations and was severely depressed. (*See* Tr. 271, 285, 288, 291, 295, 298). Moreover, by December 2008, Claimant reported a good mood, improved energy, concentration, memory, focus and sleep, and her examination was essentially normal, except for allegations of auditory hallucinations, which had decreased; her GAF score was assessed at 60, indicating moderate, nearly mild symptoms. (Tr. 295). These generally moderate findings from Mountain Lakes support the ALJ's RFC findings. Therefore, the court concludes this substantial evidence supports the ALJ's RFC finding and determination that Claimant was not disabled.

5.     **Plaintiff Failed to Present Specific Arguments Regarding the Pain Standard.**

Although Plaintiff provides a review of the pain standard in his brief (Pl's Mem. 14), he fails to make any specific, cognizable argument relating to that standard. Thus, Plaintiff has waived any argument regarding the pain standard because Plaintiff has failed to present specific arguments with regard to the ALJ's application of the pain standard. *Outlaw v. Barnhart*, 197 Fed.Appx. 825, 828 n.3 (11th Cir. 2006) (holding that the claimant waived his argument that the ALJ erred in not crediting his physical exertional impairments because, despite listing the issue in the statement of

issues, "he did not elaborate on this claim or provide authority about this claim."); *see also*, *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422, *Rowe v. Schreiber*, 139 F.3d 1381, 1382 n.1.

Alternatively, after review, the court concludes that the ALJ properly evaluated Claimant's pain allegations. The ALJ found that Claimant's medically determinable impairments could not reasonably be expected to cause her alleged symptoms. (Tr. 22). He also found her statements regarding the intensity, persistence, and limiting effects of her symptoms credible only to the extent they were consistent with his RFC finding. (*Id.*). And, he found that Claimant's pain assertions were simply inconsistent with the clinical evidence of record. (Tr. 23). The ALJ specifically noted that Claimant's allegations of needing a walker and wheelchair were not consistent with the objective evidence. (Tr. 22). The ALJ also cited Claimant's repeatedly normal physical examinations, findings of full strength and a lack of physical reasons for Claimant's alleged lower extremity weakness. (*See* Tr. 182-83, 185-87, 194-98, 300, 303, 305, 307-09, 311-12, 314, 317, 320, 324-26, 328, 334-35, 337-39, 378). He also noted the generally mild to normal diagnostic testing results she received. (Tr. 213, 221, 223-24, 311, 313, 321-22, 334, 378, 382). The ALJ further found that Claimant's allegations of hallucinations unpersuasive. This finding is supported by the fact that Mountain Lakes' notes repeatedly assessed Claimant with GAF scores in the 50-60 range indicating only moderate symptoms, as such scores would be unusual for an individual suffering regular hallucinations.[5] Moreover, Claimant's examinations at Mountain Lakes repeatedly found no hallucinations despite her reports to the contrary (Tr. 284, 287, 290, 295), and in October 2008, though Claimant specifically reported visual and auditory hallucinations, the notes state that she did

---

[5] Behavior that is considerably influenced by delusions or hallucinations is generally represented by GAF scores between 21-30, not the 50-60 assigned to Claimant. *See* DSM-IV at 23.

not attend to internal stimuli and had no evidence of a thought disorder. (Tr. 290). Dr. Arnold also found that Claimant had no overt pain indicators. (Tr. 239). Accordingly, the court concludes that substantial evidence supports the ALJ's finding that Claimant's allegations were not fully credible.[6]

### VI. Conclusion

The court finds the Commissioner's decision is supported by substantial evidence and that proper legal standards were applied. Therefore, the ALJ's decision is due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this _____14th_____ day of March, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiff's arguments about the propriety of considering Claimant's activities of daily living (Pl.'s Br. at 14-15) are off the mark as the ALJ did not rely on her activities of daily living to discount her credibility, but rather noted other reasons supported by the record.